Jonathon D. Nicol (State Bar No. 238944)
JONES DAY
3 Park Plaza, Suite 1100
Irvine, California 92614
Telephone: (949) 851-3939
Facsimile: (949) 553-7539
Email: jdnicol@jonesday.com

Attorneys for Defendant EXPERIAN
INFORMATION SOLUTIONS, INC.

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| KAMLESH BANGA,<br><br>Plaintiff,<br><br>v.<br><br>EXPERIAN INFORMATION SOLUTIONS, INC. and DOES 1 through 30, inclusive,<br><br>Defendants. | CASE NO. C05-04417-MMC (BZ)<br><br>RESPONSE OF JONES DAY AND DEFENDANT EXPERIAN INFORMATION SOLUTIONS, INC. TO THE COURT'S NOVEMBER 8, 2006 ORDER TO SHOW CAUSE; DECLARATIONS OF JONATHON D. NICOL AND ABRIL TURNER IN SUPPORT THEREOF |

## I. INTRODUCTION

Defendant Experian Information Solutions, Inc. ("Experian") and its counsel, Jones Day, respectfully submit this Response to the Order to Show Cause, issued by the Court on November 8, 2006. The Court ordered Jones Day and Experian to respond as to why contempt proceedings should not be initiated or sanctions imposed against them for failing to comply with the Court's prior Settlement Conference Order issued on June 29, 2006.

Despite receiving and calendaring the dates in the Court's June 29, 2006 Order, Jones Day failed to comply with the terms of the Order. Jones Day submits that this unacceptable failure was an isolated incident. Counsel for Experian went out of town for his wedding and honeymoon and inexcusably neglected the obligations to the Court and to Experian. The failure was not the fault of Experian. Jones Day was responsible for ensuring compliance with the Court's Order.

Jones Day's actions, though inexcusable, were not deliberate nor consistent with its performance in other aspects of this litigation. Jones Day respectfully requests that Experian not be penalized for its counsel's failure, that any penalty be assessed against Jones Day, and that the Court consider that the failure to comply was not the result of willful defiance of the Court.

## II. BACKGROUND

### A. PLAINTIFF'S LAWSUITS

On October 31, 2005, Plaintiff Kamlesh Banga ("Plaintiff") filed suit against Experian for violations of the Fair Credit Reporting Act.[1] (Nicol Decl. ¶ 2.) Plaintiff served Experian with her complaint on or about March 2, 2006. (Nicol Decl. ¶ 4.) On March 22, 2006, Xuan-Thu Phan, an associate in the San Francisco office of Jones Day, filed Experian's Answer to Plaintiff's Complaint. (Nicol Decl. ¶ 5.) Plaintiff later filed a First Amended Complaint on June 2, 2006, which Experian answered on June 12, 2006. (Nicol Decl. ¶¶ 6, 8.)

### B. THE PARTIES COMMENCED DISCOVERY

The parties began the formal discovery process in late Spring/early Summer 2006. Plaintiff first served Experian with a Deposition Subpoena for Production of Business Records for the *Banga v. World Savings and Loan* matter, seeking documents pertinent to the present action. (Nicol Decl. ¶ 7.) On June 7, 2006, Experian, through its counsel, produced approximately 200 pages of documents in response to the Subpoena. (Nicol Decl. ¶ 7.) These documents included Experian's internal/business records regarding Plaintiff's credit file from January 2002 to December 2004 and are relevant to the present action. (Nicol Decl. ¶ 7.) The parties continued with written discovery. Experian produced over 350 additional pages of documents on August 2, 2006 in response to Plaintiff's document requests in this case. (Nicol Decl. ¶ 11.) These documents included Experian's records regarding Plaintiff's credit file, correspondence

---

[1] This lawsuit is one of three actions by Plaintiff involving alleged errors in her Experian credit report. (Nicol Decl. ¶ 3.) In her first suit, filed on December 31, 2003, Plaintiff sued California State 9 Credit Union in Contra Costa County Superior Court. California State 9 Credit Union brought a Cross-Complaint against Experian on October 12, 2004. (Nicol Decl. ¶ 3.) The suit against Experian was dismissed in February of 2005. (Nicol Decl. ¶ 3.) Plaintiff also is pursuing *Banga v. World Savings and Loan* in Alameda County Superior Court, Case No. RG04160864. Although Experian is not a party to that action, it also involves alleged errors in her Experian credit report and Experian has provided third-party discovery in that case. The present action is Plaintiff's third lawsuit involving her Experian credit file.

1   between Plaintiff and Experian, and documentation of Plaintiff's various requests for

2   investigation pursuant to Section 1681i of the Fair Credit Reporting Act. (Nicol Decl. ¶ 11.)

3         On September 6, 2006, Experian served Plaintiff with a privilege log covering Experian's

4   confidential documents. (Nicol Decl. ¶ 13.) The parties subsequently prepared a Stipulated

5   Protective Order which Judge Chesney signed on September 14, 2006. (Nicol Decl. ¶ 17.) All of

6   the listed confidential documents were then produced. (Nicol Decl. ¶ 18.) Although Plaintiff

7   previously submitted a Motion to Compel, Plaintiff withdrew the motion after having reached an

8   informal agreement with counsel. (Nicol Decl. ¶¶ 12, 16.)

9         Throughout the discovery process the parties requested and granted several discovery

10   extensions for each other. (Nicol Decl. ¶¶ 14-15, 21.) Experian has responded to all of

11   Plaintiff's discovery requests. (Nicol Decl. ¶ 33.)

12   **C.**     <u>**SETTLEMENT CONFERENCE ORDER AND SETTLEMENT CONFERENCE**</u>

13         On June 29, 2006, the Court issued an Order scheduling a settlement conference for

14   November 7, 2006. The Order required that (1) counsel appear at the settlement conference; (2) a

15   client representative with full settlement authority appear at the settlement conference; (3)

16   counsel prepare a settlement statement to be lodged with the court and served on opposing

17   counsel seven calendar days prior to the conference, *i.e.*, by October 31, 2006; and (4) counsel

18   prepare a confidential, candid evaluation to be lodged with the Court. See Order Scheduling

19   Settlement Conference, June 29, 2006.

20         The Settlement Conference Order was received by counsel on June 29, 2006. (Nicol Decl.

21   ¶ 9.) The Order was entered into Jones Day's docket and calendaring system on July 2, 2006.

22   (Nicol Decl. ¶ 10.) In mid-September 2006, Ms. Phan left Jones Day. (Nicol Decl. ¶ 19.)

23   Jonathon Nicol, an attorney in Jones Day's Irvine, California office, took over the representation

24   of Experian in this case. (Nicol Decl. ¶ 19.) Before she left, Ms. Phan informed Mr. Nicol of all

25   outstanding discovery and upcoming deadlines, including the settlement conference of

26   November 7, 2006. (Nicol Decl. ¶ 19.) On September 21, 2006, Mr. Nicol entered his

27   appearance as counsel of record for Experian. (Nicol Decl. ¶ 20.)

28

On October 23, 2006, approximately one week before Experian's settlement conference statement was due to be lodged with the Court, Mr. Nicol began a two-week absence due to his October 28th wedding in Kansas City followed by his honeymoon. (Nicol Decl. ¶ 22.) He made arrangements to have another attorney in his office open and review his mail. (Nicol Decl. ¶ 22.) Although Mr. Nicol set his email to automatically inform senders that he was not in the office, he did not leave a message on his voice-mail stating that he was out of the office. He continued to check email and voice-mail until October 27, 2006. (Nicol Decl. ¶ 22.) From October 28, 2006 to November 6, 2006 Mr. Nicol did not check email or voicemail. (Nicol Decl. ¶ 22.) He also did not make arrangements to have someone review his voicemail. (Nicol Decl. ¶ 22.)

When counsel left for his wedding and honeymoon, he inexcusably forgot about the scheduled settlement conference. (Nicol Decl. ¶ 22.) Counsel did not prepare a settlement conference statement before leaving or make arrangements to have it prepared in his absence. (Nicol Decl. ¶ 22.)

On October 26, 2006, Plaintiff faxed her settlement demand to Jones Day. (Nicol Decl. ¶ 23.) Counsel did not see the facsimile until his return on November 6, 2006. (Nicol Decl. ¶ 23.) On or around Friday, November 3, 2006, the Court's secretary, Ms. Rose Maher, called Mr. Nicol's office and left a message regarding the impending settlement conference. (Nicol Decl. ¶ 24.) Because he failed to check voicemail or authorize someone to do so on his behalf, Mr. Nicol did not get this message until he returned from his honeymoon on Monday, November 6, 2006. (Nicol Decl. ¶ 24.)

On November 6, 2006, Mr. Nicol contacted Ms. Maher as soon as he received her voicemail. (Nicol Decl. ¶ 25.) He also contacted Abril Turner, Experian's client representative, to confirm her availability for the settlement conference. (Nicol Decl. ¶ 25.) At this time Mr. Nicol also called Plaintiff, who graciously stipulated to continue the settlement conference for two weeks. (Nicol Decl. ¶ 25.)

After speaking with Plaintiff regarding the stipulation, Mr. Nicol again contacted Ms. Maher on November 6, 2006 to see if the Court would agree to the parties' two week extension. (Nicol Decl. ¶ 26.) Counsel was informed that the Court intended to hold the settlement

1  conference as scheduled. (Nicol Decl. ¶ 26.) Counsel drafted a settlement conference statement
2  which was lodged with the court via email on November 6, 2006. (Nicol Decl. ¶ 26.) Counsel
3  reviewed Experian's documents regarding Plaintiff's claims to meaningfully participate in the
4  settlement conference and discussed the issues with Experian. (Nicol Decl. ¶ 27.)

5  On November 7, 2006, counsel and Experian's client representative, Abril Turner,
6  attended the settlement conference. (Nicol Decl. ¶ 28.) Counsel for Experian brought a copy of
7  Experian's settlement conference statement for Plaintiff. (Nicol Decl. ¶ 28.) Experian's
8  representative had full authority to enter into a settlement on behalf of Experian. (Nicol Decl.
9  ¶ 28.)

10  At the conference, Plaintiff provided several documents that were very helpful in
11  evaluating Plaintiff's claims. (Nicol Decl. ¶ 29.) Experian and its counsel had not previously
12  seen these documents. (Nicol Decl. ¶ 29.) During the conference, Experian's client
13  representative called internal analysts at Experian to discuss the content of the documents
14  Plaintiff provided, and to discuss their effect on Plaintiff's allegations and on Experian's
15  reporting of items in Plaintiff's credit file. (Nicol Decl. ¶ 30.) In light of the new information,
16  and given the three lawsuits concerning Plaintiff's Experian credit report, Experian and its
17  counsel sought in good faith to continue Experian's investigation so that Plaintiff's complaints
18  would be resolved fully and completely. (Nicol Decl. ¶¶ 30, 31.) The conference concluded on
19  November 7, 2006 after approximately two and a half hours. (Nicol Decl. ¶ 32.)

## D. THE COURT'S ORDER TO SHOW CAUSE

On November 8, 2006, the Court issued an Order to Show Cause why contempt proceedings should not be initiated under 28 U.S.C. § 636(e) or sanctions imposed under Federal Rule of Civil Procedure 16(f) against Jones Day and/or Experian for their failure to comply with the Court's June 29, 2006 Settlement Conference Order. See Order to Show Cause, November 8, 2006.

Jones Day apologizes to the Court and to Plaintiff, and takes complete responsibility for its failure. Jones Day submits that its conduct, although unacceptable, was an isolated event and

1 not a deliberate or willful disregard of the Court or its Order. Experian should not be penalized
2 for the conduct of its counsel.

### III. RESPONSE

#### A. CONTEMPT PROCEEDINGS AND/OR SANCTIONS SHOULD NOT LIE AGAINST EXPERIAN.

Under the Court's June 29, 2006 Settlement Conference Order, Experian was obligated to appear at the settlement conference through a representative with full authority to negotiate a settlement. See Order Scheduling Settlement Conference, June 29, 2006. Experian complied with its obligations. (Turner Decl. ¶¶ 2-3.)

Experian first learned of the settlement conference on November 6, 2006. (Turner Decl. ¶ 3.) Experian's representative discussed Plaintiff's claims, Experian's reporting of Plaintiff's credit information and related issues to meaningfully and in good faith participate in the settlement conference. (Turner Decl. ¶¶ 4-5.) Ms. Turner appeared at the settlement conference as Experian's client representative and she had full authority to enter into a settlement on behalf of Experian. (Turner Decl. ¶¶ 4-5; Nicol Decl. ¶ 28.) After being shown certain documents by Plaintiff, documents Ms. Turner had not seen before, Ms. Turner called internal analysts at Experian to discuss the information contained in the documents, and the effect the documents may have on information contained in Plaintiff's Experian credit file. (Turner Decl. ¶¶ 6-7.)

Despite its good faith participation in the settlement conference and its attempt to resolve all of the issues regarding Plaintiff's Experian credit file, Experian was unable to do so at the conference. Based on the new information and evidence learned at the conference, Experian needed to further investigate Plaintiff's claims and the information contained in her credit file. Experian did not disregard or disobey the Court's June 29, 2006 Order. Experian should not be penalized for the conduct of its counsel.

#### B. CONTEMPT PROCEEDINGS SHOULD NOT BE INITIATED AGAINST JONES DAY.

Contempt proceedings may be civil or criminal depending on the purpose of the relief sought. *Int'l Union, UMWA v. Bagwell*, 512 U.S. 821, 827 (1994). If the purpose is to vindicate

the authority of the court, the contempt proceeding is viewed as criminal; if the purpose is to coerce compliance or compensate the complainant, the proceeding is civil. *Id.* at 827-28; *Kirkland v. Legion Ins. Co.*, 343 F.3d 1135, 1140 (9th Cir. 2003). Contempt can be civil and criminal simultaneously, but to the extent an order begins to look punitive that part should be treated as criminal. *Int'l Union*, 512 U.S. at 830-31. Labels do not matter; a serious fine can be considered criminal even though the imposing court calls it "civil." *Id.* at 838. Here, the Order to Show Cause appears to seek vindication of the Court's authority, so the contempt proceedings should be treated as criminal. See Order to Show Cause, November 8, 2006.

The foundation for the criminal contempt power is the need to protect the judicial process from willful impositions, particularly those designed to hobble the normal machinery of justice. *In re Brown*, 454 F.2d 999, 1006 (D.C. Cir. 1971). To find that an act was committed with criminal contempt, there must be a willful violation of a clear and definite court order beyond a reasonable doubt. *United States v. Powers*, 629 F.2d 619, 627 (9th Cir. 1980). The contemnor must have acted willfully, in intentional defiance of the court's dignity and authority. *In re Brown*, 454 F.2d at 1006-07. To support a finding of criminal contempt, there must be evidence of intentional disregard of one's obligations to the court or intentional disrespect to the court. *De Vaughn v. District of Columbia*, 202, 207 U.S. App. D.C. 205 (D.C. Cir. 1980).

Despite Jones Day's prompt and proper calendaring of the June 29, 2006 Settlement Conference Order, an inexcusable mistake was made. (Nicol Decl. ¶¶ 10, 19, 22.) Jones Day submits that its failure does not rise to the level of willfulness required for a finding of criminal contempt. In *De Vaughn*, the court found that an attorney who confused time limitations imposed by the court was at most guilty of negligence when he failed to file a pretrial statement on time. *De Vaughn*, 202 U.S. App. at 207. The situation is similar here.

Counsel for Experian forgot that the settlement conference was scheduled for November 7, 2006. (Nicol Decl. ¶ 22.) Counsel went out of town for his wedding and honeymoon and did not prepare for the conference before he left. (Nicol Decl, ¶ 22.) Jones Day did not intend to disregard the Court's Settlement Conference Order. (Nicol Decl. ¶ 35.) Jones Day submits that this was an isolated incident and not deliberate nor consistent with its

representation of Experian in the other aspects of this action. Jones Day meant no disrespect to the Court, its authority, the judicial process, or to Plaintiff. (Nicol Decl. ¶ 35.)

C. **COMPENSATORY CIVIL CONTEMPT PROCEEDINGS.**[2]

Compensatory civil contempt proceedings involving fines paid to a court are punitive and require a showing of willfulness. *Hicks v. Feiock*, 485 U.S. 624, 632 (1988). When courts impose fines for noncompliance with an order, the relief is remedial when the fine is paid to the complainant. *Id.* The purpose of such relief is to compensate the complainant for the costs of the contemptuous conduct, and thus the contempt order is civil. *Int'l Union*, 512 U.S. at 829 (quoting *United States v. Mine Workers*, 330 U.S. 258, 303-04 (1947)). The Order to Show Cause does not indicate whether any potential fine would be remedial or punitive.[3]

The failure to comply with the Court's June 29, 2006 Order is an unacceptable mistake. When counsel discovered the mistake, counsel tenaciously attempted to remedy the error. (Nicol Decl. ¶¶ 25-31.) Counsel contacted the Court, Experian, and Plaintiff to facilitate Experian's earnest and good faith participation in the settlement conference. (Nicol Decl. ¶ 25.) A settlement conference statement was drafted and lodged with the court via email on November 6, 2006. (Nicol Decl. ¶ 26.) Counsel and Experian discussed the facts and issues to ensure that they would participate meaningfully in the settlement conference. (Nicol Decl. ¶ 27.)

Counsel and Experian's representative with full settlement authority attended the settlement conference. (Nicol Decl. ¶ 28.) At the conference, they reviewed documents provided by Plaintiff which had not been seen before. (Nicol Decl. ¶ 29.) Experian's representative called and spoke with internal analysts at Experian about the documents in the hopes of fully and finally resolving all of Plaintiff's complaints about her Experian credit file. (Nicol Decl. ¶ 30.) Unfortunately, it was determined that further investigation was necessary. (Turner Decl. ¶ 8; Nicol Decl. ¶ 30.)

---

[2] Coercive civil contempt does not appear to apply because the opportunity for compliance has passed. A coercive civil contempt proceeding must give the violator a chance to purge itself of the contempt. *F.J. Hanshaw Enters., Inc. v. Emerald River Dev., Inc.*, 244 F.3d 1128, 1138 (9th Cir. 2001); *Int'l Union*, 512 U.S. at 829. Responding parties cannot comply with the June 29, 2006 Order because the November 7, 2006 settlement conference has passed.

[3] To the extent that the fine would be punitive, please see section A, *supra*.

D.  **SANCTIONS UNDER RULE 16(f).**

Under Federal Rule of Civil Procedure 16(f) a court may impose sanctions if a party's attorney fails to obey a pretrial order or is substantially unprepared to participate in a pretrial conference. Fed. R. Civ. P. 16(f). Sanctions contained in Rule 16(f) are designed to punish lawyers for conduct which unreasonably delays or otherwise interferes with expeditious management of trial preparation. *Royal Palace Hotel Assocs. v. International Resort Classics*, 178 F.R.D. 588, 591 (M.D. Fla. 1997). Rule 16(f) confers broad discretion on a court to fashion a remedy appropriate to the violation. *Lory v. GE*, 179 F.R.D. 86, 89 (N.D.N.Y. 1998). The exercise of that discretion is informed by the facts of each case, including any patterns of noncompliance and any prejudice to opposing parties. *Id.*

Unfortunately, there are many examples of conduct sanctionable under Rule 16(f). *See Lucas Auto. Eng'g, Inc. v. Bridgestone/Firestone, Inc.*, 275 F.3d 762, 769 (9th Cir. 2001) (sanctions for failure to attend a mediation conference were appropriate, notwithstanding the party's claim that he was suffering from an incapacitating headache at the time, because the party failed to notify the parties beforehand of his nonappearance); *Link v. Wabash R. Co.*, 370 U.S. 626, 635 (1962) (court did not abuse its discretion in dismissing plaintiff's action because of his attorney's failure to appear at a pre-trial conference, of which he had been given notice); *Nick v. Morgan's Foods, Inc.*, 99 F. Supp. 2d 1056, 1063-64 (E.D. Mo. 2000) (employer was sanctioned for lack of good faith participation in mediation of employee's sexual harassment complaint, where it made a calculated decision not to prepare mediation memorandum and not to attend mediation it felt was waste of time and money); *Estate of Costner v. Phillips Petroleum Co.*, 121 F.R.D. 690, 695 (W.D. Okla. 1988) (monetary sanctions would be imposed on plaintiff's counsel for failure to comply with court order establishing deadline for final witness list where counsel filed three lists, two after deadline, names on lists were continually shuffled and contained numerous deficiencies).

These cases involve situations where attorneys took active measures to avoid compliance with court orders and/or where attorneys simply decided not to appear at required conferences. Some attorneys prejudged the merits of settlement conferences and then decided not to submit the

required memoranda or attend. Others made no efforts to notify the court and parties regarding their impending absence. Still others repeatedly acted with disregard to the court's authority and thereby established a pattern of transgression demanding censure.

Despite promptly receiving and calendaring the dates contained the June 29, 2006 settlement conference order, inexcusable mistakes were made. (Nicol Decl. ¶¶ 10, 22, 34.) Jones Day accepts responsibility for its mistakes. Its failures were not a willful violation of the Court's Order and Jones Day had no intent to disrespect the Court or Plaintiff. (Nicol Decl. ¶¶ 34-35.)

Once counsel learned of the mistakes, Jones Day attempted to belatedly comply with the Court's June 26, 2006 Order. See section III, B, paragraph 3, *supra*. Albeit late, counsel prepared and submitted a settlement conference statement. (Nicol Decl. ¶ 26.) Counsel and Experian's client representative with full authority arrived promptly at the Court with every intent of working toward a resolution of the matter. (Nicol Decl. ¶¶ 27-28.)

Jones Day has worked with Plaintiff in good faith since the commencement of this action. The parties have engaged in informal and formal, open, and productive discovery. See section II, B, *supra*. Both sides have requested and granted extensions. *Id.* Counsel for Experian has produced all documents regarding Plaintiff's Experian credit records, including Experian's confidential documents, and has responded to all of Plaintiff's discovery requests. (Nicol Decl. ¶¶ 7, 11, 18, 33.) Instead of engaging in a pattern of bad acts, counsel continuously worked with Plaintiff during the discovery process and continues to work toward fully and finally resolving all issues with Plaintiff's Experian credit file. (Nicol Decl. ¶¶ 7, 11, 14, 18, 21, 31.) Responding parties submit that there was no "blatantly contumacious conduct or pattern of dilatory tactics". *Blackwell v. Amchem Products, Inc.*, 108 F.R.D. 287, 288-289 (S.D. Ga. 1985) (denying sanctions where it was plausible that the attorney's nonfeasance resulted from communication mishaps and poor file supervision). Jones Day respectfully asks that the Court take these efforts into consideration, and not penalize Experian for its counsel's failures.

### IV. CONCLUSION

Experian and Jones Day did not intend any disrespect to the Court or to Plaintiff in failing to comply with the Court's June 29, 2006 Settlement Conference Order. Jones Day fully

acknowledges its mistakes.  Counsel submits that Jones Day's conduct or fault should not be imputed to Experian.  Jones Day and Experian pray the Court will consider that Jones Day's actions were not willful or intentional but were an isolated, although inexcusable, event and not indicative of our performance and representation in the other aspects of this litigation.

Dated:  November 20, 2006

Respectfully submitted,

JONES DAY

By: _____
Jonathon D. Nicol

Attorneys for Defendant
EXPERIAN INFORMATION SOLUTIONS, INC.